UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| EDWARD JEROME HARBISON | ) | |
| | ) | |
|     *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:11-cv-178 |
| | ) | *Chief Judge Curtis L. Collier* |
| HAMILTON COUNTY, TENNESSEE; CITY. | ) | |
| OF CHATTANOOGA, TENNESSEE; JOHN | ) | |
| DOES, GARY D. GERBITZ, STANLEY | ) | |
| LANZO; STEPHEN MORRIS BEVIL; | ) | |
| THOMAS J. EVANS; PETER STRIANSE; | ) | |
| JAMES M. DAVIS; CHARLES EDWARD | ) | |
| FOSTER; LARRY EDWARD SWAFFORD, | ) | |
| CLYDE L. WILHOITE; and DONALD | ) | |
| TATUM; All are Sued in Their Individual | ) | |
| and Official Capacities; | ) | |
| | ) | |
|     *Defendants.* | ) | |

## **MEMORANDUM**

Edward Jerome Harbison ("Plaintiff"), a *pro se* prisoner, has filed a civil rights complaint pursuant to 42 U.S.C. §§ 1983 and 1985(3) against the Hamilton County prosecutors and Chattanooga police officers whom he alleges were involved in the investigation and prosecution of him in 1983 for murder, second degree burglary, and grand larceny.

For the reasons set forth below, no service shall issue, and this complaint will be **DISMISSED** (Court File No. 2). In addition, Plaintiff's motion to proceed *in forma pauperis* will be **GRANTED IN PART** and **DENIED IN PART** (Court File No. 1), his motion to appoint counsel will be **DENIED** (Court File No. 3), and his motion to "slow pay filing fees" will be **DENIED as MOOT** (Court File No. 5).

## I. Application to Proceed *In Forma Pauperis*

It appears from the application to proceed *in forma pauperis* submitted by Plaintiff that he lacks sufficient financial resources at the present time to pay the required filing fee of $350.00. Therefore, Plaintiff's motion to proceed *in forma pauperis* will be **GRANTED IN PART** and **DENIED IN PART** (Court File No. 1). Plaintiff's motion to proceed *in forma pauperis* will be **GRANTED** to the extent Plaintiff can file his complaint without the prepayment of the full filing fee but **DENIED** to the extent the filing fee will not be waived. Therefore, Plaintiff is not relieved of the ultimate responsibility of paying the $350.00 filing fee, but rather, will be **ASSESSED** the entire filing fee and permitted to pay it in installments in accordance with the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 28 U.S.C. § 1915(b)(1); *see McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *abrogated on other grounds, Jones v. Bock*, 549 U.S. 199, 205 (2007).

Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Plaintiff's inmate trust account at the institution where he now resides shall submit to the Clerk, United States District Court, 900 Georgia Ave., Room 309 Chattanooga, Tennessee 37402, as an initial partial payment, whichever is the greater of

> (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or
>
> (b) twenty percent (20%) of the average monthly balance in Plaintiff's inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such

2

monthly income exceeds $10.00, until the full filing fee of $350.00 as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk of Court will be **DIRECTED** to send a copy of this memorandum and order to the Warden and Trust Fund Officer at Riverbend Maximum Security Institution, the Commissioner of the Tennessee Department of Correction, and the Attorney General for the State of Tennessee to ensure the custodian of Plaintiff's inmate trust account complies with the portion of the Prison Litigation Reform Act relating to payment of the filing fee.

The agency having custody of Plaintiff shall collect the filing fee as funds become available. This order shall become a part of Plaintiff's file and follow him if he is transferred to another institution. The agency having custody of the Plaintiff shall continue to collect monthly payments from his prisoner account until the entire filing fee of $350.00 is paid.

Plaintiff will also be **ORDERED** to provide the prison officials at any new institution with a copy of this order. Failure of the Plaintiff to notify the new prison officials of this order and outstanding debt, will result in the imposition of appropriate sanctions against Plaintiff without any additional notice or hearing by the Court.

## II. Screening of Complaint

### A. 28 U.S.C. §§ 1915A and 1915(e)(2)

Title 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) provides for the dismissal of a prisoner's complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Guided by the analogous cases dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the Court will determine whether the complaint should be

3

dismissed because, even if everything alleged in the compliant is assumed to be true and accurate, Plaintiff is not entitled to relief as a matter of law. *Cf. Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993); *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987).

### B. *Pro Se* Pleadings Liberally Construed

The law is well established that this Court is required to liberally construe *pro se* complaints to allow the development of a potentially meritorious case. *Erickson v. Pardus,* 551 U.S. 89 (2007); *Haines v. Kerner*, 404 U.S. 519, 521 (1972). In addition, when evaluating a *pro se* compliant, the plaintiff's allegations are presumed to be true. *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996)*, cert. denied,* 520 U.S. 1251 (1997). The mandated liberal construction requires a court to permit a complaint to proceed if it can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

Nonetheless, the requirement of liberal construction does not translate to ignoring a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Department of Social Services for City of Baltimore*, 801 F.2d 387, 391 (4th Cir. 1990). The liberal construction has boundaries as *pro se* plaintiffs are required to comply with substantive law and the minimum requirements for pleading a civil complaint under Rule 8(a) of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). In other words, the Court is not required to conjure up factual allegations and claims on Plaintiff's behalf which he failed to plead in his complaint. *Id.* at 714. Therefore, the relaxed *pro se* pleading requirement does not automatically entitle *pro se* plaintiffs to take every case to trial. *Id.; Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

4

### C. Failure to State a Claim

The Court is required to dismiss a prisoner's complaint if it fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii). The Court construes the complaint in the light most favorable to the Plaintiff and accepts all well-pleaded allegations of fact in the complaint as being true. *Erickson v. Pardus*, 551 U.S. 89 (2007). When a factual allegation is capable of more than one reasonable inference, it must be construed in Plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 228 (6th Cir. 1997). The Court may not dismiss a complaint merely because the Court does not believe the allegations of fact set forth in the complaint. *In re Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir. 1997).

The Court is not required to accept as true mere legal conclusions and unwarranted inferences of fact. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). The complaint must do more than recite bare assertions of legal conclusions without supporting allegations of material facts. *Evans v. Pearson Enterprises Inc.,* 434 F.3d 839, 847 (6th Cir. 2006). Conclusive allegations or bare legal conclusions will not suffice as factual allegations. *Followell v. Mills*, 2009 WL 723132, *4 (6th Cir. March 18, 2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (complaint must contain more than statement of facts that merely creates speculation or suspicion of a legally cognizable cause of action).

Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

5

standard is not akin to a 'probability require," but it asks for more than a sheer possibility that a defendant has acted unlafully." *Id.* (Internal citations omitted).

**III.   Background**

A summary of Plaintiff's underlying criminal case is necessary to place Plaintiff's complaint into context because his complaint is based on claims of alleged unlawful arrest and prosecution in the underlying criminal case. Because Plaintiff's civil complaint brought under 42 U.S.C. §§ 1983 and 1985(3) requires application of the *Heck v. Humphrey*, 512 U.S. 477 (1994), favorable termination rule[1] as to all of Plaintiff's civil rights claims, the facts and procedural history in the criminal case are discussed in some detail.

Although the district courts ordinarily do not consider matters outside a civil rights complaint when deciding whether to dismiss it for failure to state a claim, *Weiner v. Klais & Co.,* 108 F.3d 86, 88-89 (6th Cir. 1999), *overruled on other grounds, Swierkiwica v. Sorema, N.A.,* 534 U.S. 506 (2002), they may consider public records and any other matters of which the court may take judicial notice under Rule 201(b) of the Federal Rules of Evidence.

In reviewing Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2), this Court takes judicial notice of the record in the underlying criminal case of *State v. Harbison,* 704 S.W.2d 314 (Tenn. 1986); underlying state post-conviction case of *Harbison v.* State, 1996 WL 266114 (Tenn. Crim. App. 1996), and the underlying federal habeas case of *Harbison v. Bell*, United States District Court for the Eastern District of Tennessee at Chattanooga, Case No. 1:97-cv-52, *aff'd*, 408 F.3d 823 (6th Cir. 2005), *cert. denied*, 547 U.S. 1101 (2006). The facts and procedural history of

---

[1]   *Heck's* favorable termination rule requires a prisoner to demonstrate a favorable termination of his underlying conviction before recovering from an allegedly unconstitutional conviction or imprisonment.

the criminal case are set forth in the Sixth Circuit's opinion affirming the denial of habeas relief. *Harbison v. Bell*, 408 F.3d 823 (6th Cir. 2005).

### A. Procedural History

Plaintiff was convicted of first-degree murder, second-degree burglary, and grand larceny and was sentenced to death. After an unsuccessful direct appeal and state post-conviction proceedings, Plaintiff filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Tennessee, asserting twenty-six claims as grounds for relief. At the time, Plaintiff's *Brady* and conflict-of-interest claims had not yet been advanced in state court. The district court dismissed Plaintiffs § 2254 petition as meritless but granted him a certificate of appealability (COA) on two claims. The Sixth Circuit granted him a COA on one other claim.

In June 2001, after the district court denied Plaintiff's habeas petition, he filed a motion to reopen his state post-conviction proceeding and subsequently requested that the pleading be treated as a petition for a writ of *error coram nobis*. Claims involving the issues for which a COA had been granted were considered in the state proceedings. In March 2004, after conducting an evidentiary hearing, the state court dismissed the motion to reopen, noting that the circumstances in which a post-conviction proceeding could be reopened were strictly limited by Tenn.Code Ann. § 40–30–217.[2] The court also dismissed Plaintiff's petition for writ of error coram nobis because it was not timely filed and it determined too much time had elapsed between Plaintiff's discovery of the evidence and his filing in state court. The court concluded there was no due process violation because Plaintiff had been afforded a reasonable amount of time to litigate these issues.

---

[2] This provision has been renumbered to § 40–30–117 (2003).

In May 2004, Plaintiff requested to supplement the record at the Sixth Circuit, with the new state-proceeding evidence and/or to hold in abeyance pending the resolution of the state-court appeal. These motions were denied and the Sixth Circuit considered the record that was before the district court. The Sixth Circuit affirmed the denial of Plaintiff's federal habeas petition. *Harbison v. Bell,* 408 F.3d 823, 828 (6th Cir.,2005), *cert. denied*, 547 U.S. 1101 (2006), *r'hrg denied*, 547 U.S. 1203 (2006).

**B.     Facts**

The facts of Plaintiff's underlying criminal case are taken from the Sixth Circuit's decision denying federal habeas relief:

> On January 15, 1983, Frank Russell returned home from work to discover that his wife, Edith, had been murdered. The Russells rented an apartment at the back of their Chattanooga, Tennessee, house to a tenant who, at that time, was away on vacation, and Mrs. Russell's body was found inside this apartment. Medical examiners determined that the cause of her death was "massive multiple skull fractures with marked lacerations of the scalp and head, expelling brain tissue and literally crushing the victim's face and disfiguring her beyond recognition." *State v. Harbison*, 704 S.W.2d 314, 316 (Tenn.1986). Mrs. Russell was last seen that afternoon at a neighborhood market, where witnesses spoke with her between approximately 2:30 and 2:45 p.m. Bags of groceries and ignition keys were found in Mrs. Russell's car, which was parked in the driveway, when her body was discovered near midnight. Nothing in the record indicates a precise time of death. The logical inference is that Mrs. Russell was killed a short time after purchasing the groceries in the middle of the afternoon, or else she would have taken them and her keys out of her car. Moreover, the porch lights were off. Her husband said she always left the outside lights on for protection.

> The Russells' house and the rented apartment were burglarized. Missing items included "an RCA XL–100 television, two cable television converters, a quartz heater, a Polaroid 210 camera, a silver Cross pen and pencil set, a jeweler's loop, a jewelry box, antique jewelry, a marble vase, and Mrs. Russell's purse." *Id.* The police later found the quartz heater, the Polaroid camera, the pen and pencil set, and the jeweler's loop in the residence of Janice Duckett, who was Harbison's girlfriend and co-defendant David Schreane's sister. The jeweler's loop was found in Harbison's shaving kit. In an adjacent unoccupied apartment, the police found Mrs. Russell's purse, a jewelry box, and two large paper bags containing antique

8

glassware and brassware. The stolen television was found in the residence of Schreane's girlfriend.

Schreane was taken into custody and questioned on February 21, 1983, when he led police to the missing marble vase. Chemical testing later revealed the presence of blood on the vase. Furthermore, debris that was vacuumed from the carpet in Harbison's car revealed crystalline calcite fragments that were consistent with the marble vase.

Harbison also was arrested on February 21, 1983. In a taped statement, he confessed to killing Mrs. Russell. Harbison stated that after he drove his girlfriend home from work, he and Schreane went to the Russell home, determined that it was empty, and used a screwdriver to break into the residence. While he and Schreane were carrying the stolen items from the house and the apartment to their car, Mrs. Russell returned home. Harbison contended that he thought Mrs. Russell was reaching for a gun, so he grabbed her. He stated that he hit her with the marble vase, "at the most" two times.

At his trial, Harbison testified that he had not killed Mrs. Russell and that he was not at the Russell house on the day of the murder. He said that he was at his girlfriend's home that afternoon and evening. He asserted that his confession was coerced, and that the police had threatened to arrest his girlfriend and take away her children if he did not confess. He further testified that the police had told him what to say and that his taped confession, which was played to the jury, had been altered. Finally, he testified that he had purchased the jeweler's loop at a pawn shop.

*Harbison v. Bell,* 408 F.3d 823, 825 -826 (6th Cir., 2005)

### IV. <u>Civil Complaint</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a constitutional right by a person acting under color of state law. *See AirTrans, Inc. v. Mead*, 389 F.3d 594, 598 (6th Cir. 2004). To state a claim under 42 U.S.C. § 1985(3), a claimant must allege both membership in a protected class and discrimination on account of it. *Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000).

Aside from the fact that Petitioner's forty-nine page rambling, repetitious, and at times, contradictory complaint merely recites the elements of a cause of action with no factual content

9

whatsoever, the Court discerns the main thrust of his complaint is that he was falsely arrested without probable cause as a result of a conspiracy between the District Attorney's office and the Chattanooga police department to fabricate evidence against him and fail to disclose *Brady* material. Petitioner's claims arise from the arrest and prosecution of him for the January 15, 1983, murder of Edith Russell.

Plaintiff brings this §§ 1983 and 1985(3) suit against Hamilton County, the City of Chattanooga, and several employees of the District Attorneys Office and Chattanooga Police Department who were involved in his underlying criminal case. Plaintiff asserts the following claims: (1) he was subjected to a warrantless search without probable cause, consent, or judicial authorization as the result of a conspiracy between employees of the Hamilton County District Attorney's Office and Chattanooga Police Department to fabricate probable cause;[3] (2) the prosecutors and police officers manufactured and fabricated false evidence to justify his warrantless arrest, which led to his convictions and sentence of death;[4] (3) his convictions are based on coerced, coached, and fabricated witness testimony and concealed material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972); (4) his convictions resulted from "the false pretense of a trial" using false and fabricated testimony to deliberately deceive the court and jury resulting in his "tainted" convictions; (5) his February 17,

---

[3] Plaintiff also claims Defendants "worked together to formulate warrants[.]" (Court File No. 1, p. 5, ¶ 9).

[4] Plaintiff's death sentence was commuted by then-Governor Phil Bredesen to life imprisonment without the possibility of parole. Then-Governor Bredesen told the Associated Press: "It's obviously a heinous crime, but when I compare it to others I don't think it rose to the level of a death penalty crime." http://www.timesfreepress.com/news/2011/jan/12/bredesen-commutes-death-sentence-harbison-pardons.

10

1983, and February 21, 1983, arrests lacked probable cause thus resulting in his illegal detention for investigative purposes; (6) Hamilton County's and the City of Chattanooga's failure to train the individual Defendants[5] and the policies of those entities led to the illegal misconduct of the Prosecutors[6] and Police Officers in arresting Plaintiff without probable cause and depriving him of his constitutional rights;[7] (7) Hamilton County failed to train and supervise the attorneys in the District Attorney's Office;

### A. Claims Barred by *Heck v. Humphrey*

Aside from the fact that Plaintiff has failed to provide any factual support for his claims, after careful consideration of Plaintiff's voluminous, repetitive, rambling complaint and each discernable claim, the Court concludes all claims are barred by *Heck* because each necessarily implies the invalidity of his convictions and sentence. As previously noted, under *Heck*, a plaintiff cannot pursue a §§ 1983 or 1985(3)[8] claim that, if successful, would necessarily imply the invalidity of a

---

[5] Under his failure to train theory, Plaintiff has the burden of proving the policymaker for the District Attorney's Office and Chattanooga Police Department were "deliberately indifferent" to the need to train and that the lack of training actually caused the alleged constitutional violations. *See Connick v. Thompson*, 131 S.Ct. 1350, 1358 (2011). Although Plaintiff provided no facts to support his claims that Hamilton County and the City of Chattanooga failed to train the Defendants from engaging in the alleged illegal conduct that form the basis of his claims, even assuming the claims are sufficient, a finding in his favor would necessarily imply the invalidity of his convictions, which is prohibited by *Heck*.

[6] The employees in the Hamilton County District Attorney's Office are state employees. Tenn. Code Ann. § 8-42-101(3).

[7] Plaintiff does not identify any policy, regulation, or procedure to support this factually unsupported allegation.

[8] Careful review of Plaintiff's complaint did not reveal any factual allegations that the Defendants' actions were based upon his race or membership in any protected class. Nevertheless, even assuming a sufficient claim was made, the *Heck* favorable termination rule also applies to § 1985(3) claims. *Lanier v. Bryant*, 332 F.3d 999, 1005 (6th Cir. 2003)(affirming district court's extension of *Heck* to a claim under § 1985).

11

previous conviction or sentence, unless the plaintiff can demonstrate favorable termination of the prior conviction or sentence. *Id*. at 487. The Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486-87 (footnote omitted).

Contrary to Plaintiff's implied assertion, the commutation of his death sentence to life without parole was not an expungement by executive order as required by *Heck v. Humphrey*, 512 U.S. at 486-87 ("a 1983 plaintiff must prove a sentence or *sentence* has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to made such determination, or called into question by a federal court's issuance of a writ of habeas corpus.") (emphasis added)). "[A] commutation of sentence is the reduction of a *lawful punishment* to which a person has been condemned to a *less severe lawful punishment*." *Collins v. State*, 550 S.W. 2d 643, 655 (Tenn. 1977) (emphasis added). Consequently, the commutation of Plaintiff's sentence is of no consequence in this proceeding.

Here, success on any of Plaintiff's claims would necessarily imply the convictions and sentence are invalid because underlying all of his claims are the allegations that Defendants fabricated probable cause, thus resulting in his illegal arrest without probable cause and his conviction was fraudulently obtained based on perjured testimony and the withholding of *Brady* material. *See Smithhart v. Towery,* 79 F.3d 951, 952 (9th Cir. 1996 (*Heck* barred claims that defendants lacked probable cause to arrest); *Williams v. Schario*, 93 F.3d 527, 529 (8th Cir., 1996)

12

(claim defendants presented perjured testimony was barred by *Heck's* favorable termination rule); and *Skinner v. Switzer*, 131 S.Ct. 1289, 1300 (2011) (noting *Brady* claims are outside the province of § 1983). Plaintiff claims the actions of the Defendants of arresting without probable cause/fabricating probable cause were based on policy and procedure of Hamilton County and the City of Chattanooga. Plaintiff's arguments, assuming they were true, would necessarily imply the invalidity of his conviction and sentence because it would have been based on evidence gathered during an illegal arrest and the evidence was fabricated and untruthful. Plaintiff's claims are precisely the type prohibited under *Heck*.

In other words, an aspect of each of Plaintiff's specific claims necessarily implies the invalidity of his convictions and sentence. Plaintiff's first few claims relate to his allegation that he was arrested without probable cause or the probable cause was based on fabricated evidence. His other claims relate to the claim that his conviction was based on perjured testimony and a purported *Brady* violation. A finding in Plaintiff's favor would necessarily imply the invalidity of his conviction and sentence. Notably, Plaintiff could have raised his claims that his arrest lacked probable cause, the probable cause was based on fabricated evidence, or his conviction was based on perjured testimony in his post-conviction proceedings but failed to do so. Although he raised a *Brady* claim, the habeas court concluded it was procedurally barred. Thus, to recognize the arrest lacked probable cause or the probable cause was fabricated, the conviction was based on perjured testimony, his rights were violated by the withholding of evidence, or his rights were violated as a result of the policies and procedures of Hamilton County and the City of Chattanooga, would necessarily imply his conviction and sentence are invalid. Accordingly, the claims are barred by the *Heck v. Humphrey's* favorable termination rule, as relief on any of his claims would imply the

Case 1:11-cv-00178   Document 6   Filed 03/29/12   Page 13 of 15   PageID #: 102

invalidity of his murder, second degree burglary, and grand larceny convictions and sentences which have not been reversed or set aside.

      **B.**    **Requested Relief Barred by *Heck***

Plaintiff does not specifically request the Court to invalidate his conviction and release him from prison, even though, as previously stated, a finding in his favor on his claims would necessarily imply his convictions and sentence were invalid. Rather, he seeks declaratory, injunctive, and monetary relief. *Heck,* as extended by *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (prisoner's claim for injunctive and monetary relief not cognizable under § 1983 as it necessarily implied invalidity of good-time credits where he alleged deceit and bias on part of hearing officer), does not permit declaratory relief or money damages based on allegations that necessarily imply the invalidity of a conviction or sentence. Because awarding relief to Plaintiff on any portion of his claims would necessarily imply the invalidity of his convictions, his claims for declaratory relief and money damages are not cognizable under § 1983.

Indeed, the type of declaratory relief Plaintiff requests here is, *inter alia*, a "Judgment, Order or Decree declaring that the February 21, 1983[,] Warrant, in [sic] null and void and unconstitutional . . ." (Court File No 2, p. 47). A favorable ruling necessarily implies the invalidity of his convictions in direct violation of *Heck*. Accordingly, because Plaintiff has not had his convictions reversed, expunged, or otherwise declared invalid, his claims are not yet cognizable in a § 1983 action.

Plaintiff also requests a restraining order and preliminary injunction to enjoin, some unnamed defendant, "his agents, servants, employees, attorneys, and all person in action concert and participation, from any and all other illegal acts of harassment by defendants or other acting on their behalf toward the Plaintiff[]," as well as requesting a perpetual injunction upon final hearing of this

14

matter (Court File No. 2, p. 17, ¶ 82-82). Plaintiff has not alleged Defendants have engaged in any harassment or any other inappropriate conduct towards him, thus he has not demonstrated a significant threat of irreparable injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (an injunction is unavailable "absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). Plaintiff provides no credible, substantiated evidence of identifiable, potentially repeatable wrongs and fails to support his request for injunctive relief with any legal or factual grounds. Thus, to the extent injunctive relief is available it is **DENIED**.

## V. Conclusion

Accordingly, because Plaintiff's claims are *Heck*-barred, Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**[9] for failure to state a claim upon which relief can be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

An appropriate judgment order will enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[9] Plaintiff can refile if he satisfies the *Heck* favorable termination requirement.